IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BARBARA A. STOKES                                                                                     PLAINTIFF

           v.                                 Civil No. 07-2039

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                       DEFENDANT

## MEMORANDUM OPINION

      Plaintiff, Barbara Stokes, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) pursuant to Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423.  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**Procedural Background**

      The plaintiff protectively filed her application for DIB on July 8, 2004, alleging an onset date of April 22, 2003, due to back, neck, and shoulder pain; diabetes mellitus; carpal tunnel syndrome; high blood pressure; vision difficulties; obesity; and, heel pain.  (Tr. 11, 53, 82, 138). Plaintiff was eligible for DIB through December 31, 2008.  (Tr. 13).  An administrative hearing was held on April 4, 2006.  (Tr. 402-426).  Plaintiff was present and represented by counsel.

      At the time of the administrative hearing, plaintiff was 57 years old and possessed the equivalent of a high school education.  (Tr. 404).  The record reveals that she had past relevant work experience ("PRW") as a security guard and a dishwasher.  (Tr. 18, 66).

AO72A
(Rev. 8/82)

On September 7, 2006, the Administrative Law Judge ("ALJ") determined that plaintiff suffered from a combination of severe impairments, but did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 13). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work requiring no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 16). With the assistance of a vocational expert, the ALJ then concluded that plaintiff could return to her PRW as a security guard. (Tr. 18).

The plaintiff appealed this decision to the Appeals Council, but her request for review was denied on March 31, 2007. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. # 4). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 9, 10).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

AO72A
(Rev. 8/82)

**Discussion**

In the present case, the ALJ determined that plaintiff did "not have severe impairments with regard to her allegations of disability due to numbness and decreased strength in her hands due to bilateral carpal tunnel syndrome, tendonitis in her right elbow, right thumb surgery, neuropathy in her feet, and vision difficulties. (Tr. 16). "Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities." *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001)(citing *Nguyen v. Chater,* 75 F.3d 429, 430-31 (8th Cir.1996).

Based on our review of the evidence, we believe it was error for the ALJ to determine that plaintiff's arm, feet, and vision problems were non-severe. The record shows that plaintiff underwent carpal tunnel release surgery in 1989 and 1990. (Tr. 193). In October 1996, she had a resection of the retrocalcaneal exostosis of the left heel due to Haglund's deformity of the left foot. (Tr. 243-248). In August 1998, plaintiff had a tear in the rotator cuff of her right shoulder surgically repaired. (Tr 193, 200, 219-228). Then, in November 2001, she underwent left trigger finger release surgery. (Tr. 193, 300-301).

In January 1999, plaintiff was diagnosed with asymptomatic occular hypertension in the both eyes. (Tr. 383). In January 2001, plaintiff was noted to have a retinal tear on her left eye. (Tr. 381). By February, plaintiff was reporting difficulty reading fine print, difficulty with her

distance vision, and difficulty seeing with her glasses. (Tr. 378). The eye doctor again noted a retinal tear on plaintiff's left eye and referred her to Dr. Ennen for laser treatment. (Tr. 378). A progress noted dated February 22, 2002, shows that plaintiff had undergone the laser treatment. (Tr. 376). However, she continued to have problems with blurry vision and was repeatedly noted to be suspect for glaucoma. (Tr. 145, 147, 153, 369, 373, 374, 375). In January 2004, plaintiff's optometrist prescribed Xalatan to help alleviate the pressure in her inner eye. (Tr. 147).

On July 18, 2003, plaintiff reported pain in her left shoulder. (Tr. 193). Plaintiff indicated that the pain radiated from her cervical spine, up to her head, and down her left shoulder. She stated that the pain was very similar to the pain she had experienced with the tear in her right rotator cuff. An examination revealed a limited range of motion in plaintiff's left shoulder with difficulty raising it above her head. Dr. Sumer Phillips, her primary care physician, diagnosed plaintiff with left shoulder pain, ordered an MRI of her right shoulder, and prescribed Naprosyn and physical therapy. (Tr. 193).

On August 20, 2003, plaintiff reported nocturnal pain and difficulty with range of motion in her left shoulder. (Tr. 191). Her previous MRI had revealed a probable partial tear of the supraspinatus tendon with mild acromioclavicular ("AC") joint degenerative changes. (Tr. 192). Dr. Stephen Heim, an orthopaedist, was not surprised by these results, as plaintiff had an extensive surgical history. (Tr. 191). On examination, plaintiff had the "classical symptoms" with pain on abduction. Although Dr. Heim could not feel an obvious, palpable click, he did note marked weakness with adduction and resistance. He was of the opinion that plaintiff likely had a small rotator cuff tear, and recommended that she undergo surgical correction. Plaintiff

stated that she would speak to her husband and determine when would be best for her to undergo the surgery. (Tr. 191).

On September 15, 2003, plaintiff underwent surgery for impingement syndrome and a possible left rotator cuff tear. (Tr. 189-190, 291-296). Initially, plaintiff did well, however, in June 2004, she began reporting a recurrence of pain in her left shoulder. An examination revealed a limited range of motion in the left shoulder. (Tr. 177). Between June 23, 2004, and August 10, 2004, plaintiff was treated by Engelhoven Chiropractic on at least 18 occasions. (Tr. 279-282).

On July 9, 2004, plaintiff complained of left shoulder pain her to gynecologist, Dr. Kevin Phillips. (Tr. 338). On July 20, 2004, plaintiff again complained of continued discomfort in her left shoulder. (Tr. 173). Although she had a good range of motion, plaintiff reported weakness and continued nocturnal pain. An x-ray revealed mild degenerative changes of the glenohumeral joint. (Tr. 174). An MRI of plaintiff's left shoulder showed postoperative changes with no evidence of a recurrent tear. (Tr. 171).

On September 15, 2004, plaintiff reported some burning in the bottom of her feet to Dr. Cory Gamble, her endocrinologist. (Tr. 169). Initially, he was of the opinion that she was suffering from a very mild component of peripheral sensory neuropathy, which was not in need of immediate treatment. However, in January 2006, Dr. Gamble referred plaintiff to podiatry due to continued complaints of foot pain. (Tr. 394).

An MRI of plaintiff's left knee dated September 2004 revealed degenerative changes in the knee with some soft tissue calcification posterior to the distal femur. (Tr. 168). An MRI of her lumbar spine also showed a bony prominence between the L3 and L5 levels probably

secondary to degenerative changes or post-surgical in origin and anterolisthesis of the L3 and L4 thought to be degenerative in nature. (Tr. 168).

On December 22, 2004, an MRI of plaintiff's lumbar spine revealed degenerative disk changes at the L3-4 level with small far posterolateral disk bulges versus protrusion and multilevel facet degenerative change greatest at the L3-4 level. (Tr. 164).

On December 27, 2004, plaintiff was referred to Dr. Thomas Kelly due to lesions on her left thigh. (Tr. 289, 336-337). An examination of her left lateral thigh demonstrated two palpable, firm subcutaneous nodules on the mid-thigh which were slightly tender. The third lesion described by Dr. Phillips could not be palpated. Dr. Kelly diagnosed her with symptomatic subcutaneous lesions on the left lateral thigh and recommended excision with advancement flap closure as an outpatient. Plaintiff underwent surgery on January 11, 2005. (Tr. 333-335).

On January 26, 2006, plaintiff consulted with Dr. Kent Magrini, a podiatrist, concerning the burning pain and numbness on the top of her right foot. (Tr. 388-389). Plaintiff indicated that the discomfort had begun two weeks prior with no history of trauma, and had become more uncomfortable the more she used her foot. Although initially aggravated by wearing shoes, plaintiff stated that she was also experiencing discomfort when walking barefoot. An examination revealed essentially normal muscle power both actively and against resistance in the joints of the feet and ankle. However, plaintiff did exhibit a flexible pes cavus[1] foot type bilaterally, more pronounced on the right. There was also a palpable, tender, cord-like mass

---

[1]"Pes cavus is a high arch of the foot that does not flatten with weight bearing." *See* Norman S. Turner, M.D., *Pes Cavus*, *at* www.emedicine.com.

consistent with a deep peroneal nerve on the dorsal aspect of the instep with a positive Tinel's sign with palpation of the nerve. In the first right interdigital space, there was decreased sensation along the course of the deep peroneal nerve in the first interspace as well as on the lateral aspect of the hallux and medial aspect of the second toe. Dr. Magrini diagnosed plaintiff with deep peroneal neuritis of the right foot and non-insulin dependent diabetes. He gave plaintiff steroid injections along the nerve and on the dorsal aspect of the instep. Plaintiff was given a corticosteroid information sheet and samples of Biofreeze to massage on the area 3 to 4 times per day for the next couple of weeks. She was also instructed with regard to avoiding any shoes that caused pressure across the irritated area. (Tr. 389).

Given this evidence, we do not believe that substantial evidence to support the ALJ's determination that plaintiff's shoulder, foot and vision problems were non-severe. It is clear that these impairments could have more than a minimal effect on her ability to perform work-related activities. For instance, the previous surgeries on her shoulders for rotator cuff tears and her continued pain in her left shoulder could make it difficult for plaintiff to perform work activities that would require her to reach and lift items above her head. Likewise her foot discomfort could plausibly interfere with her ability to stand and/or walk for the requisite number of hours necessary for the performance of light level work. As the ALJ did not obtain an RFC assessment from any of plaintiff's treating doctors, we believe that remand is necessary to allow the ALJ to obtain RFC assessments to clarify the record regarding the severity of plaintiff's impairments. *See Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) (RFC must be supported by some medical evidence). While we note that the record does contain one RFC assessment completed by a non-treating, non-examining, consultative doctor, we also recognize that the opinion of a

physician who examines the plaintiff once or not at all does not generally constitute substantial evidence. *Jenkins v. Apfel*, 196 F3d 922, 925 (8th Cir. 1999). Therefore, on remand, the ALJ is directed to address interrogatories to the physicians who have treated plaintiff, asking the physicians to review plaintiff's medical records; to complete a physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 1st day of February 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)